IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVIS YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 8901 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| AMERICAN JUNKIE RIVER NORTH, LLC, an | ) | |
| Illinois corporation, and BRAD PARKER, KEITH | ) | |
| BADGLEY, and KYLE BADGLEY, all | ) | |
| individuals, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Travis Young sued his former employer defendant American Junkie River North, LLC and its principal owners Brad Parker, Keith Badgley and Kyle Badgley in the Circuit Court of Cook County, Illinois. Counts I through III, brought against American Junkie, allege a breach of an employment agreement, violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq., and violations of the Illinois Whistleblowers Act, 740 ILCS 174/1 et seq. Count IV, brought against the individual defendants, also alleges a violation of the Illinois Wage Payment and Collection Act. Defendants removed the case to this court, asserting that plaintiff's employment contract constitutes a benefit plan as defined under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1002(3). According to defendants, because the employment agreement is an ERISA plan, plaintiff's state law contract claim seeking a severance payment is "completely preempted by ERISA." Plaintiff has moved to remand, arguing that the employment agreement is not an "ERISA plan," leaving this court without subject matter jurisdiction. For the reasons described below, plaintiff's motion is granted and the case is remanded to the Circuit Court of Cook County, Illinois.

**BACKGROUND**

In July 2013 plaintiff entered into an employment agreement with American Junkie to become its chief operating officer. He specifically negotiated severance compensation in exchange for a confidentiality clause and a covenant not to compete. American Junkie operates a single location bar and restaurant in Chicago. It has approximately 110 employees. Plaintiff is the only employee with a contractual severance arrangement, and the arrangement does not relate to any other severance plan. His contract allowed him to participate in the company's other employee benefit plans, but the severance arrangement does not include continued participation in any plan.

According to his complaint, in conducting his duties as chief operating officer plaintiff discovered certain financial irregularities and possible theft. He claims to have reported those issues to the primary investors and the Chicago Police Department. Approximately three months later American Junkie terminated plaintiff's employment. The company took the position that plaintiff was terminated for "just cause" which, under the terms of the employment agreement, does not trigger the severance payment requirement. Plaintiff claims that there was no basis for termination and that he was in fact terminated without cause, requiring American Junkie to pay the contractually mandated severance.

**DISCUSSION**

Defendants removed the case to this court claiming that plaintiff's state law breach of contract claims is preempted by ERISA, which vests federal district courts with exclusive jurisdiction of actions arising under the employee benefit plans it governs. 29 U.S.C. § 1132(e). ERISA preempts any state-law claim that relates to any such employee benefit plan. 29 U.S.C.

§ 1144(a). A state-law claim "relates to" an ERISA plan if it "requires the court to interpret or apply [its] terms." Collins v. Ralston Purina Co., 147 F.3d 592, 595 (7th Cir. 1998). Because plaintiff's breach of contract claim requires the court to interpret his employment agreement to determine if he is entitled to a severance payment, if the agreement constitutes an ERISA plan, plaintiff's claim is preempted and the court has jurisdiction.

ERISA defines a "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both . . .." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is "any plan, fund, or a program . . . established or maintained by an employer . . . for the purpose of providing . . . medical, surgical, or hospital care benefits, or benefit in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1); Cvelbar v. CBI Illinois Inc., 106 F.3d 1368, 1373 (7th Cir. 1997) (abrogated on other grounds by International Union of Operating Engineers v. Rabine, 161 F.3d 427, 430 (7th Cir. 1998)). An "employee pension benefit plan" is "any plan, fund, or program . . . established or maintained by an employer . . . that . . . provides retirement income to employees, or . . . results in a deferral of income." Cvelbar, 106 F.3d at 1374 (quoting 29 U.S.C. § 1002(2)(A)).

Because the statute uses the word plan in its definitions of "plan," "employee welfare benefit plan," and "employee pension benefit plan," the court must look beyond the wording of the statute to determine whether plaintiff's employment agreement constitutes an ERISA plan. Cvelbar, 106 F.3d at 1374. Case law establishes that an ERISA plan requires an ongoing administrative scheme. Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 12 (1987), and that its terms must be reasonably ascertainable. Diak v. Dwyer, Costello & Knox, P.C., 33 F.3d 809, 812 (7th Cir. 1994).

3

In Fort Halifax, the Supreme Court analyzed whether a Maine statute that required an employer that closed its plants to pay a one-time lump-sum severance payment to its employees was preempted by ERISA. The Court concluded that the one-time payment was a benefit, but that it did not constitute a benefit plan. Such a plan requires an ongoing administrative program to meet the employer's obligations. Fort Halifax, 482 U.S. at 6. The Maine statute did not require employers to create such a program.

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well never have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

Id. at 12.

The Seventh Circuit has further refined the "contours" of an ongoing administrative program. For example, in Cvelbar, the court stated that "simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employees's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria." Cvelbar, 106 F.3d at 1375. In concluding that the agreement in question, which provided for a one-time lump-sum payment, as well as other benefits for a period of three years, constituted an ERISA plan, the court noted that the payments

4

to be made to the employee could not be determined by simple mathematical calculations because, among other things, the contract extended medical coverage and pension benefits on the terms and conditions of the employer's retirement plan, requiring the employer to make administrative determinations about the employee's eligibility and level of coverage. Id. at 1377-78.

Again, in Collins, 147 F.3d at 595-96, the court held that an agreement that provided for a lump-sum payment of six months salary and one year of continued benefits upon termination constituted an ERISA plan. In reaching its conclusion, the court noted that the employer had entered such agreements which numerous executives and "faced the prospect of [making] multiple payments to various managers at different times and under different circumstances." Id.

Application of Cvelbar and Collins leads the court to conclude that the instant employment agreement does not require or establish an ongoing administrative scheme and does not constitute an ERISA plan. First, although American Junkie must exercise some managerial discretion to determine whether plaintiff is to be terminated for cause, requiring no severance payment, or without cause, requiring a payment, that is a one-time decision for one employee. If the termination is without cause, then the company is required to pay plaintiff a one-time lump-sum payment equal to his current base salary. The company can choose, but is not required, to pay that sum in equal monthly installments for 24 months, but in either event the amount of the payment is a simple mechanical mathematical calculation.

Additionally, unlike in Cvelbar or Collins, the agreement in question provided for no other ongoing benefits that would require administration. The agreement in the instant case does require the company to provide outplacement counseling and support services from an out-

5

placement firm for three months, but that does not require creation of an administrative scheme, particularly because there are no other employment agreements that contain plaintiff's severance provision. The fact that plaintiff's agreement is one of a kind also distinguishes the instant case from Aurelius v. Jones, Lang, LaSalle, Inc., 2005 WL 3042676 (N.D. Ill. 2005), relied on by defendant. In Aurelius, the "plan" in question required a series of payments over a two year period, and covered numerous employees, creating the possibility of "multiple payments to various employees, at different times and under different circumstances by hinging eligibility on a variety of circumstances and events." Id. at *3 (citing Collins, 147 F.3d at 595). The plan also required a plan administrator to exercise discretion to determine whether an employee is eligible for benefits and, if so, how much the employee is to receive. Because the determinations and payments were ongoing, the plan created "the need for financial coordination and control." Id.

None of the characteristics of the plan in Aurelius that required an administrative scheme are present in plaintiff's employment agreement. The instant agreement covers one employee only and requires at most three simple one-time determinations. First, whether plaintiff was terminated with or without cause. Next, if without, then a simple calculation of the amount due, and then the hiring of an out placement firm. These are one-time decisions that require no ongoing administration. American Junkie has assumed no responsibility to pay benefits on a regular basis, and faces no periodic demands on its assets that create a need for financial coordination and control. As in Fort Halifax, American Junkie may well never have to pay the severance benefits, and to the extent that the obligation to do so arises, satisfaction of that duty involves making only a single set of determinations and payments. Consequently, the court

concludes that plaintiff's employment contract does not constitute an ERISA plan and thus the court lacks subject matter jurisdiction.

## **CONCLUSION**

For the reasons set forth above, plaintiff's motion to remand is granted.[1]

**ENTER:** April 14, 2014

_____
**Robert W. Gettleman**
**United States District Judge**

---

[1] Defendant also moved to dismiss a count IV, arguing that it is preempted by ERISA (Doc. 12). That motion, which had been stayed pending ruling on the motion to remand, is also denied.